UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PAULA J. COX, et al., | ) |
|       Plaintiffs | ) |
| v. | ) No. 2:16-cv-00480-JDL |
| OCWEN LOAN SERVICING, LLC, et al., | ) |
|       Defendants | ) |

### RECOMMENDED DECISION ON MOTION TO DISMISS

In this action arising from water damage sustained at four ski condominium units, three of the remaining seven defendants – Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates ("RALI"), Series 2007-QS1 and Series 2006-QS16 (together, "Deutsche Bank")[1] – move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims of plaintiffs Paula J. Cox, Spurgeon M. Cox, Jr., and Brian P. Cox ("Plaintiffs") against them. *See* Defendants' Motion To Dismiss Plaintiffs' Complaint ("Motion") (ECF No. 27) at 4-7; Complaint (ECF No. 1-1) ("Complaint"), attached to Notice of Removal (ECF No. 1), ¶¶ 35-124.

Ocwen and Deutsche Bank seek dismissal of the Complaint on the grounds that the Plaintiffs' negligence claim (Count I) is barred by the economic loss doctrine and/or is

---

[1] Deutsche Bank, as trustee for RALI Series 2007-QS1, and Deutsche Bank, as trustee for RALI Series 2006-QS16, are separate defendants; however, for ease of reference, and because nothing in this recommended decision turns on the distinction, I refer to both herein as "Deutsche Bank." The Plaintiffs also separately sued RALI Series 2007-QS1 and RALI Series 2006-QS16; however, those entities were terminated as defendants following the court's grant of Deutsche Bank's unopposed motion to amend the case caption. *See* ECF Nos. 22-23.

1

inadequately pled, thus vitiating their derivative *respondeat superior* claim (Count II).  *See* Motion at 4-7.  For the reasons that follow, I recommend that the court deny the Motion.

## I.  Applicable Legal Standards

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted).  This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Román-Oliveras v. Puerto Rico Elec. Power Auth*., 655 F.3d 43, 45 (1st Cir. 2011).  Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Id.* (citation and internal quotation marks omitted).

"[T]he burden is on the moving party to prove that no legally cognizable claim for relief exists."  5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 462 (3d ed. 2004) (footnote omitted).

## II. Factual Background

The Complaint sets forth the following relevant factual allegations.[2]

The Plaintiffs own four condominium units (Units 5, 6, 7, and 8) at 53 Sunday River Road in Bethel, Maine. Complaint ¶ 1. Ocwen claims ownership in a mortgage from the Plaintiffs to Dynamic Capital Mortgage, Inc. ("Dynamic Capital") by instrument dated August 30, 2006, recorded in the Oxford County Registry of Deeds at Book 4001, Page 61, for Unit 5. *Id.* ¶ 10; *see also* Exh. A (ECF No. 27-2) to Motion ("Unit 5 Mortgage").

Deutsche Bank, as trustee for RALI Series 2007-QS1, claims ownership in a mortgage from the Plaintiffs to Dynamic Capital by instrument dated August 30, 2006, recorded in the Oxford County Registry of Deeds at Book 4001, Page 84. Complaint ¶¶ 21-22; *see also* Exh. B (ECF No. 27-3) to Motion ("Unit 7 Mortgage").

Deutsche Bank, as trustee for RALI Series 2006-QS16, also claims ownership in a mortgage from the Plaintiffs to Dynamic Capital by instrument dated August 30, 2006, recorded in the Oxford County Registry of Deeds at Book 4001, Page 103. Complaint ¶¶ 27-28; *see also* Exh C (ECF No. 27-4) to Motion ("Unit 8 Mortgage").

Deutsche Bank hired Ocwen to service the mortgages it claims to own with respect to Units 7 and 8. Complaint ¶¶ 66, 83. Part of the servicing that Ocwen agreed to perform for Deutsche Bank was to maintain Units 7 and 8. *Id.* ¶¶ 67, 84. Ocwen hired Altisource Asset Management Corporation ("Altisource") and CoreLogic, Inc. ("CoreLogic") to lock the Plaintiffs out of Units

---

[2] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id.* "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Id.* (citation and internal quotation marks omitted).

3

5, 7, and 8 and to preserve the condition of those units.  *Id*. ¶¶ 36-37, 59-60, 76-77, 110-16, 118-21.[3]

Altisource locked the Plaintiffs out of Units 5, 7, and 8 without notice to them or their permission.  *Id*. ¶¶ 38-40, 61-63, 78-80.  Altisource and CoreLogic failed to properly preserve the condition of Units 5, 7, and 8.  *Id*. ¶¶ 41, 64, 81, 112, 115, 120.  On or about, December 1, 2012, Units 5, 7, and 8 were damaged when pipes froze, causing water to run in each of those units.  *Id*. ¶¶ 42, 65, 82.  The Plaintiffs also sustained damage to their personal property in each of those units.  *Id*. ¶¶ 14, 26, 34.  With respect to all three units, Altisource and CoreLogic worked within the scope of Ocwen's requests.  *Id*. ¶¶ 95, 101, 106, 111, 114, 119.

In total, the Plaintiffs sustained $465,711.19 in damages to Units 5, 6, 7, and 8 and $74,013.72 in damages to their personal property located in those units.  *Id*. ¶¶ 123-24.

The Plaintiffs allege that both Altisource and Ocwen owed them a duty to exercise reasonable care in maintaining Units 5, 7, and 8, and Deutsche Bank owed them a duty of reasonable care in maintaining Units 7 and 8.  *See id*. ¶¶ 43, 45, 68, 70, 72, 85, 87, 89.  They contend that, notwithstanding that duty, Altisource and Ocwen negligently and carelessly maintained Units 5, 7, and 8, and Deutsche Bank negligently and carelessly maintained Units 7 and 8, in such a manner to allow the pipes to freeze and water to run throughout each unit, damaging the condominium and the Plaintiffs' personal property.  *Id*. ¶¶ 44, 46, 69, 71, 73, 86, 88, 90.  They seek damages in the amount of $539,724.91 or in an amount that will justly compensate them for all past and future damages, plus interest, costs, and attorney fees.  *See id.* at 13.

---

[3] The Altisource entity that the Plaintiffs sued may not have been the correct Altisource entity, *see* ECF No. 42 at 1-2; however, nothing herein turns on whether it was or was not.

### III. Discussion

#### A. Economic Loss Doctrine

Ocwen and Deutsche Bank first seek dismissal of the Plaintiffs' negligence and *respondeat superior* claims on the basis that those claims are barred by the economic loss doctrine. *See* Motion at 4-6. "The economic loss doctrine marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care." *Banknorth, N.A. v. BJ's Wholesale Club, Inc.*, 394 F. Supp.2d 283, 286 (D. Me. 2005) (citation and internal quotation marks omitted). "Economic loss has been defined as damages for inadequate value, costs of repair and replacement of defective product, or consequent loss of profits – without claim of personal injury or damage to other property." *Fireman's Fund Ins. Co. v. Childs*, 52 F. Supp.2d 139, 142 (1999) (citation and internal quotation marks omitted).

The Law Court adopted the economic loss doctrine in *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267 (Me. 1995), explaining:

> A lawsuit alleging damage or injury from a faulty or defective product may be based on a number of theories, including, *inter alia*, strict liability, negligence, negligent misrepresentation, and breach of warranty. Under tort theories, recovery is permitted for personal injuries and physical damage to property other than the defective product. In addition, when personal injuries or damage to other property occur, some courts have allowed recovery for the repairs or loss of the defective product itself.
>
> Court generally, however, do not permit tort recovery for a defective product's damage to itself. Although we have not previously addressed this issue, we agree with the majority approach.
>
> The rationale underlying this rule is that damage to a product itself means simply that the product has not met the customer's expectations, or, in other words, that the customer has received insufficient product value. The maintenance of product value and quality is precisely the purpose of express and implied warranties. A situation where the injury suffered is merely the failure of the product to function properly is distinguishable from those situations, traditionally within the purview

5

>of tort, where the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property.

*Peachtree*, 659 A.2d at 269-70 (citations, internal quotation marks, and footnotes omitted).

The Law Court noted that "[w]hether a product has injured only itself may, of course, be a difficult question to answer[,]" choosing to follow the approach of "look[ing] to the product purchased by the plaintiff, as opposed to the product sold by the defendant, to determine whether a product has injured only itself." *Id*. at 271. It held that because the plaintiffs had purchased condominium units, not individual components of those units such as the windows at issue, damages caused by any defects in the windows "constituted damage only to the product itself, not to other property." *Id*. (citation and internal quotation marks omitted). Accordingly, it upheld the trial court's determination that the plaintiffs could not recover in tort for the economic damages sought ("the costs of all repairs, renovation, corrections and replacements related to the Defendant's defective performance of its contract"), which were "properly addressable under a warranty theory." *Id*. (internal quotation marks omitted).

While the Law Court has not subsequently address the economic loss doctrine, this court held that *Peachtree*'s logic extended to a service contract between two commercial entities (in that case, a contract to perform an environmental site assessment), granting summary judgment on that basis with respect to the plaintiff's negligence and negligent misrepresentation claims. *See Maine Rubber Int'l v. Environmental Mgmt. Grp., Inc.*, 298 F. Supp.2d 133, 134, 137-38 (D. Me. 2004) ("These were two commercial entities able to bargain over the terms of their agreement, and they entered into a written contract to govern their relationship. There was no risk of harm either to people or to other property. The critical issue here, as in *Peachtree*, is value and quality of what was purchased. Following *Peachtree*, I conclude that there is no reason not to leave [the plaintiff and the defendant] to their bargain.") (footnote omitted). *See also, e.g., Arundel Valley, LLC v.*

*Branch River Plastics, Inc.*, Docket No.: BCD-CV-13-15, 2014 Me. Super. LEXIS 216, at *14-*23 (Me. Sup. Ct. Nov. 5, 2014) (granting defendants summary judgment on plaintiffs' negligence and negligent misrepresentation claims based on economic loss doctrine when plaintiffs alleged that defendants failed to provide goods allegedly requested, causing only economic damages; parties' lack of privity not a bar to application of doctrine); *Maine-ly Marine Sales & Serv., Inc. v. Worrey*, No. Civ.A. CV-04-369, 2006 WL 1668039, at *2 (Me. Sup. Ct. Apr. 10, 2006) (granting plaintiffs summary judgment based on economic loss doctrine on defendant's fraud and misrepresentation counterclaims stemming from allegedly defective boat winterization service when "the only damage" the defendant suffered was damage to his engine, "the product itself," and he retained remedies for breach of contract or warranty).

Ocwen and Deutsche Bank argue that the economic loss doctrine bars the negligence/*respondeat superior* claims in this case, as well, because the Plaintiffs allege breach of obligations and duties that are laid out in the parties' mortgage contracts.  *See* Motion at 5.  Specifically, they contend that paragraph 9 of those contracts grants them the right to protect their interest in the units but does not oblige them to maintain them, as the Plaintiffs allege.  *See id*. at 5-6.  To the contrary, they note, the contracts impose a duty on the Plaintiffs to keep the properties in good repair.  *See id*. at 6.

The Plaintiffs rejoin that the economic loss doctrine is inapplicable on three grounds:

1. It applies only when there is a contract between the parties, and there is none here because the purported mortgage assignments are invalid.  *See* Plaintiff[s'] Response to Defendant[s'] Motion To Dismiss ("Response") (ECF No. 33) at 3-4.

2. The Plaintiffs allege harm not only to "the product itself[,]" which they define as the individual unit securing each mortgage, but also to the other units in the building and to their

7

personal property, neither of which was part of, or security for, each individual mortgage. *Id*. at 4.

       3.     Once Ocwen and Deutsche Bank changed the locks and prevented the Plaintiffs from being able to enter and maintain the units, they owed them a continuing duty to maintain those units and keep pipes from freezing or breaking. *See id*.

I need not determine, for purposes of the Motion, whether the asserted mortgage assignments are invalid. The Maine Superior Court, it bears noting, has held that lack of privity does not bar application of the economic loss doctrine. *See Arundel Valley*, 2014 Me. Super. LEXIS at *16-*17. In any event, regardless of whether the Law Court would agree, or whether the parties are in privity, the doctrine is inapplicable because, as the Plaintiffs persuasively argue, they allege harm not merely to "the product itself" but also to "other property." *Peachtree*, 659 A.2d at 271 (citation and internal quotation marks omitted).[4]

Ocwen and Deutsche Bank, accordingly, fail to demonstrate entitlement to dismissal on the basis of the economic loss doctrine.

### B. Asserted Failure To Plead Plausible Claim of Negligence

In the alternative, Ocwen and Deutsche Bank seek dismissal of the claims against them because the Plaintiffs fail to state a plausible claim for negligence. *See* Motion at 6-7.

"A prima facie case of negligence requires a plaintiff to establish an injury to the plaintiff that is proximately caused by a breach of a duty owed to the plaintiff by the defendant." *Grant v.*

---

[4] Moreover, paragraph 9 of the mortgage contracts arguably does not address whether a mortgagee in possession of a mortgaged property owes any duty to a mortgagor. While it provides that (i) the mortgagee has the right in certain circumstances to protect its interest in the mortgaged property by taking actions that include securing that property, (ii) the mortgagee has no obligation or duty to exercise that right, and (iii) the mortgagor agrees that the mortgagee incurs no liability for *not taking* any or all of the authorized actions, it is silent on the subject of what, if any, duties or obligations arise when a mortgagee elects to exercise its right to take possession of a mortgaged property. *See* Unit 5 Mortgage at Page ID # 312; Unit 7 Mortgage at Page ID # 331; Unit 8 Mortgage at Page ID # 350.

*Foster Wheeler, LLC*, 2016 ME 85, ¶ 14, 140 A.3d 1242, 1245-46 (citation and internal punctuation omitted).

Ocwen and Deutsche Bank argue that the Complaint fails to allege how they breached a duty owed to the Plaintiffs, instead only vaguely asserting that they failed to maintain the units. *See* Motion at 6. They contend that this is the type of conclusory assertion decried in *Iqbal*. *See id.* at 6-7; *see also, e.g., United States v. Schultz*, 282 F.2d 628, 631 (1st Cir. 1960) (pursuant to Maine law, "there can be no actionable negligence unless there is a breach of some duty").

While spare, the Complaint plausibly alleges a breach of a duty to maintain Units 5, 7, and 8. The Plaintiffs allege that, on December 1, 2012, after Ocwen and Deutsche Bank had locked them out of the premises and Ocwen had hired Altisource and CoreLogic on behalf of itself and Deutsche Bank to preserve the condition of those units, pipes froze in each, resulting in $465.711.19 of damage to the four units that are the subject of the Complaint and $74,013.72 in damages to their personal property located in those units.

Accepting these facts as alleged, and drawing all reasonable inferences in favor of the Plaintiffs, one can plausibly infer that Altisource and/or CoreLogic was negligent in performing their unit maintenance duties. The Plaintiffs allege in Counts I and II that Ocwen and Deutsche Bank bear responsibility for that breach as a result of their own negligence and/or on a *respondeat superior* theory. In the context of seeking dismissal based on the Plaintiffs' failure to plead a plausible negligence claim, Ocwen and Deutsche Bank do not argue that those theories of liability fail as a matter of law. *See* Motion at 6-7; Defendants['] . . . Reply in Further Support of [Their] Motion To Dismiss Plaintiffs' Complaint (ECF No. 36) at 3-4.

Ocwen and Deutsche Bank, accordingly, fail to demonstrate their entitlement to dismissal of the Complaint on this basis, as well.

## IV.  Conclusion

For the foregoing reasons, I recommend that the court **DENY** Ocwen and Deutsche Bank's motion to dismiss.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of March, 2017.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge