# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| PAULA J. COX, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) 2:16-cv-00480-JDL |
| OCWEN LOAN SERVICING, | ) |
| LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

### I. BACKGROUND

This suit involves three condominium units – units 5, 7, and 8, in a four-unit building in Bethel, Maine – built by the Plaintiffs, Paula J. Cox, Spurgeon M. Cox, Jr., and Brian P. Cox (collectively, the "Coxes"), in 2003.[1] In 2006, Plaintiff Spurgeon M. Cox, Jr. executed three separate promissory notes, each secured by a mortgage on one of the three units each signed by all three Coxes. They bring this action against the banks that currently hold the notes and mortgages, in connection with water damage the units suffered in 2014. ECF No. 46 at ¶¶ 123-25, 152-54, 168-70.

Defendant Ocwen Loan Servicing, LLC ("Ocwen") currently holds the note and mortgage on Unit 5, Defendant Deutsche Bank Trust Company Americas 2007-QS1 currently holds the note and mortgage on Unit 7, and Defendant Deutsche Bank Trust Company Americas 2006-QS16 currently holds the note and mortgage on Unit

---

[1] Initially four units were at issue, but the parties have settled all claims related to the fourth unit, Unit 6. *See* ECF No. 55, ECF No. 58.

8 (collectively, the noteholders are referred to as "the Banks"). Ocwen services the loans on all three units. Ocwen contracted with another company, Altisource Portfolio Solutions, Inc. ("Altisource"), to provide property preservation services for the three units.

By September 2012, Spurgeon Cox had stopped making payments on the three loans. The Coxes also stopped paying the property taxes on the units. In May 2013, the gas meters for the units were removed and the gas line was plugged, presumably depriving the units of heat. In the fall and winter of 2013-2014 Altisource inspected the units, and, pursuant to work orders from Ocwen, took steps to secure and winterize each unit by, among other things, changing the locks and draining the pipes. Altisource's contractor subsequently reported that it was not able to fully drain the pipes because there was a shared water supply for the condominium complex.[2] The Coxes assert that, in January 2014, a pipe or pipes burst in one or more of the units, causing substantial water damage to units 5, 7, and 8.

In their Amended Complaint (ECF No. 46), the Coxes allege that the water damage to their units resulted from the negligent manner in which the units were winterized. Consequently, the Amended Complaint asserts two bases for recovery against the Banks: negligence in the winterization of the Units (Count I) and

---

[2] The Coxes statement of additional facts is supported by an exhibit which is a copy of one of the work order completion forms issued by an Altisource's contractor. The form states, in relevant part:

> Dry wintered to best of ability there was no shut off per unit the entire complex would need to be drained in order for the pumps to be blown out. This is a condo. Shared heat and water are for the entire complex. No way to use air compressor or generator. Partial winterization only
> No way to blow anything out.

ECF No. 90-2 at 53. The Banks did not respond to the Coxes's additional facts, thus the substance of the work order completion form is deemed admitted. *See* D. Me. LR 56(e).

respondeat superior liability for Altisource's negligence in winterizing the units (Count II). The Banks have raised affirmative defenses, *see* ECF No. 74, and have moved for summary judgment on both counts (ECF No. 83). The Coxes have filed a cross Motion for Summary Judgment (ECF No. 85) with respect to the Banks' affirmative defenses.

## II. LEGAL ANALYSIS

To establish a prima facie case of negligence, the Coxes must show that the Banks (1) owed them a duty of care, (2) breached that duty, and (3) the breach was a proximate cause of some injury to them. *Estate of Cilley v. Lane*, 985 A.2d 481, 485 (Me. 2009). Determining whether a legal duty exists is a question of law and, "therefore, [is] grist for the summary judgment mill." *See Brown v. U.S.*, 557 F.3d 1, 3 (1st Cir. 2009); *see also Radley v. Fish*, 856 A.2d 1196, 1198-99 (Me. 2004).

The Coxes argue that the Banks had taken possession of the units and were, therefore, "mortgagees-in-possession" at the time the water damage occurred. The precise nature of the Banks' relationships to the units is consequential; if the Banks were mortgagees-in-possession at the time of the damage, then they would have been bound to "make necessary repairs and improvements to prevent the property from waste." *Miller v. Ward*, 88 A. 400, 402 (Me. 1913). "When a mortgagee becomes a mortgagee in possession, the mortgagee assume[s] the normal responsibilities of an owner or possessor of real estate." *Case v. St. Mary's Bank*, 63 A.3d 1209, 1214 (D.N.H. 2013) (internal quotation marks omitted). The Banks contend, however, that they were not mortgagees-in-possession and that it was the Coxes who, as provided

3

in the mortgages, had the duty to ensure the properties did not "deteriorate or diminish in value." *See* ECF No. 27-2 at 15, ECF No. 27-3 at 11, ECF No. 27-4 at 11.

Maine law recognizes that a mortgagee may enter its encumbered property without taking full possession of it. *See* 33 M.R.S.A. § 502 (2018) ("A mortgagee, or person claiming under him, *may enter on the premises or recover possession thereof*, before or after breach of condition, when there is no agreement to the contrary.") (emphasis added). Here, the Banks argue that they did not enter the condominium units in order to recover possession of them, but rather to protect their interests as contemplated by the mortgages. Specifically, Section 9 of each mortgage provides that in the event the borrower does not keep any of his or her promises or agreements, or abandons the property, the lender "may do and pay for whatever is necessary to protect the value of the Property," including securing the property by, "for example, entering the Property to make repairs, change locks, replace or board up doors and windows, [or] drain water from pipes[.]" ECF No. 27-2 at 16, ECF No. 27-3 at 12, ECF No. 27-4 at 12. Section 9 explicitly provides that the lender is not required to take any of the actions authorized by the section, and that the lender incurs no liability for failing to take such actions:

> Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligations to do so. I [(the borrower)] agree that Lender incurs no liability for not taking any or all actions under this Section 9.

*Id.*

Here, the Banks' entry into units 5, 7, and 8, and their limited and possibly futile efforts to winterize each unit, were plainly in line with Section 9's grant of authority permitting the mortgagee to enter the property to "make repairs, change

4

locks, replace or board up doors and windows, [or] drain water from pipes." *Id*. The Banks took some of the actions explicitly authorized by Section 9 (i.e., by entering the property to change the locks and partially drain the pipes) but failed to take others (i.e., fully draining the building's pipes). While the Banks were contractually authorized to take the actions they took, they "incur[red] no liability for *not* taking any or all actions authorized." *Id*. (emphasis added). Thus, although the Banks might have taken additional steps to more fully drain the water from the building's pipes, Section 9 is explicit that they incurred no liability for not having done so. *Id*. ("Lender incurs no liability for not taking any or all actions under this Section 9."). Moreover, the undisputed material facts establish that the Banks did not engage in the broader range of activities that are indicative of actual possession by a mortgagee, such as paying taxes, collecting rents, occupying the property, and otherwise making all necessary management decisions. *See Case*, 63 A.3d at 1215 (D.N.H. 2013); *Woodlands Community Ass'n. v. Mitchell*, 162 A.3d 306, 309 (N.J. Super. 2017).

Thus, when the Banks entered the units they were acting within the scope of their contractually agreed-upon right to protect their property interests, but not as mortgagees-in-possession. It follows that they did not have, as the Coxes claim, a possessor's duty to take full responsibility for the units. Thus, the Coxes's negligence action fails. Similarly, the Coxes separate count against the Banks for respondeat superior liability based on the actions of Altisource also fails. Regardless of whether Altisource was Ocwen's agent as the Coxes contend, or Ocwen's independent

5

contractor as the Banks contend,³ the Coxes cannot demonstrate that Altisource's actions resulted in the violation of a duty that the Banks owed the Coxes.

### III. CONCLUSION

For the forgoing reasons, I **GRANT** the Banks' Motion for Summary Judgment (ECF No. 83) with respect to both the Coxes's claim for Negligence (Count I) and claim for Respondeat Superior liability (Count II).⁴ In addition, because the Coxes's Motion for Summary Judgment challenges the Banks' affirmative defenses, it is rendered moot as a result of the grant of the Banks' Motion for Summary Judgment, and the Coxes's Motion is **DENIED** (ECF No. 85).

**SO ORDERED.**

**Dated this 16th day of February, 2018.**

                                                              /s/ JON D. LEVY
                                                        U.S. DISTRICT JUDGE

---

³ The Coxes argue that although Ocwen hired Altisource as an independent contractor, Altisource acted as Ocwen's agent. Under Maine law, "[w]hile an independent contractor can be considered an agent in some circumstances, if the contractor has contracted to accomplish physical results not under the supervision of the one who has employed [it] to produce the results, then the contractor is a nonagent contractor." *Bonk v. McPherson*, 605 A.2d 74, 78 (Me. 1992) (internal quotation marks omitted); *see also Wallace v. Moore*, No. RE-99-011, 2000 WL 33677444, at *3 (Me. June 12, 2000). It is undisputed, however, that once Ocwen issued a work order to Altisource, Altisource controlled its own work without Ocwen's supervision. ECF No. 84 at ¶ 49, ECF No. 90 at ¶ 49.

⁴ Therefore, I do not reach the remaining arguments raised by the Banks in support of their motion.